### ERWIN v. CURTIS et ux.    (No. 409.)

Court of Civil Appeals of Texas. Eastland. March 23, 1928.

Rehearing Denied April 20, 1928.

1. **Appeal and error** ⬤⟹931(1)—**Trial court's findings are regarded as embodying all material facts shown by evidence.**

Findings of fact by trial court are to be regarded by reviewing court as embodying expressly or by implication all material facts shown by evidence to exist.

2. **Appeal and error** ⬤⟹747(1)—**In suit to declare mineral deed void, failure to make finding that property was homestead is reviewable on cross-assignment.**

Where there is evidence that property was homestead, in suit to declare mineral deed void as forgery, failure of court to make finding to that effect in response to timely request is subject to review on cross-assignment.

3. **Appeal and error** ⬤⟹931(4)—**In suit to declare mineral deed void, reviewing court will not presume that evidence showed property was homestead in absence of finding.**

In suit to have mineral deed declared void as forgery in which no finding was made that property was homestead, but judgment was rendered for plaintiff, court will not presume that evidence showed property was homestead, since it cannot assume that judgment rests on existence of facts not found.

4. **Vendor and purchaser** ⬤⟹239(9)—**Bona fide purchaser for value without notice is not ordinarily entitled to usual protection where claim is dependent on forged instrument.**

Protection usually afforded to bona fide purchaser for value without notice does not as rule apply when such purchaser's claim is dependent on forged instrument.

5. **Forgery** ⬤⟹9—**Where instrument containing blanks is executed and delivered with authority to fill in blanks in prescribed manner, fraudulent filling in constitutes forgery.**

Where instrument containing blanks is executed and delivered with authority to another party to fill in blanks in prescribed manner, fraudulent filling in of such blanks contrary to authority given will constitute forgery.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Forgery.]

6. **Alteration of instruments** ⬤⟹12—**Bona fide holder for value without notice may enforce instrument, notwithstanding that after execution one with authority to fill blanks filled them in manner violative of authority conferred.**

Where person, with intent to execute contract, delivers to another an incomplete instrument and such other has authority, either express or implied, to complete instrument, such instrument is enforceable in hands of holder for value without notice, notwithstanding that blanks have been filled in manner violative of authority conferred.

Appeal from District Court, Eastland County; Elzo Been, Judge.

Suit by W. J. Curtis and wife against H. A. Erwin and others. From a judgment for plaintiffs, named defendant appeals. Reversed and rendered.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, and Turner, Seaberry & Springer, of Eastland, for appellant.

Littler & Jones and Grisham Bros., all of Eastland, for appellees.

FUNDERBURK, J. Appellees W. J. Curtis and wife, as plaintiffs in the trial court, contended that a certain mineral deed, or royalty contract, dated February 12, 1918, and covering a tract of land alleged to be their homestead, was void because same was a forgery and because the notary taking the acknowledgments of plaintiffs to same was interested as a partner with the grantee. The substance of the allegations to show forgery is that plaintiffs signed and acknowledged a blank form which they could not, and did not, read and delivered same, with the understanding and agreement that Warren, the grantee, and Mayhew, the notary, would fill in the blanks above their signatures so as to evidence the true agreement of the parties, which included an agreement that the interest conveyed (a one-half of the oil royalty) should continue only so long as the Markley lease remained in force, and that, at the expiration of said lease, all interest of the grantee was to terminate; that Warren and Mayhew, although they had promised to fill in the blanks according to agreement, fraudulently wrote up the contract over plaintiffs' signatures so that the instrument conveyed an unlimited interest in one-half of the minerals with the right to one-half of the future rentals; that plaintiffs did not learn of the alleged fraud until on or about August 21, 1920, when a letter was received from H. A. Erwin claiming to own a one-fourth interest in the royalty in the said land. H. A. Erwin and others were joined as parties defendants under allegations that they were assignees of Warren. Allegations are made of transfers by Warren to the other defendants, and prayer is for judgment setting aside the roy-

alty contracts as to all defendants and for removal of cloud from title, for damages, and for general relief.

From a judgment for plaintiffs canceling the royalty contract as to all defendants and (among other things) canceling the transfer from Knight (an assignee of Warren) to H. A. Erwin, the defendant, H. A. Erwin, alone appealed.

The case is before this court without a statement of facts. Findings of fact and conclusions of law were filed by the trial judge. The findings show that appellant was a bona fide purchaser for value without notice of any infirmity in the conveyance from Curtis and wife to Warren.

[1-3] One or two interesting, and perhaps difficult, questions suggested by the record are not so presented as to call for our determination. The land was alleged to be homestead. The findings of fact do not include a finding that the property was or was not a homestead. As to the homestead issue, the findings are silent. It is suggested by appellees that, if necessary to sustain the judgment of the trial court, we should presume that the evidence showed the property was homestead. Contrary to this view, however, we think that we are not warranted in so presuming. The homestead status of the property is not implied as a fact from any other fact or facts expressly found. The findings of fact of the trial court are to be regarded by this court as embodying expressly or by implication all the material facts shown by the evidence to exist. City Nat. Bank of Corpus Christi v. Pope (Tex. Civ. App.) 260 S. W. 903; Ridgway v. Fort Worth (Tex. Civ. App.) 243 S. W. 740; Baldwin v. Drew (Tex. Civ. App.) 180 S. W. 614; Kimball v. Houston Oil Co., 100 Tex. 336, 99 S. W. 852; Continental Ins. Co. v. Milliken, 64 Tex. 46; Smith v. Ideal Laundry (Tex. Civ. App.) 286 S. W. 287.

If there was evidence that the property was homestead, appellees had the right to have a finding to that effect. A failure of the court to make such finding in response to timely request would have been subject to review upon a cross-assignment. Continental Ins. Co. v. Milliken, 64 Tex. 46. To assume that a judgment rests upon the existence of facts not found would be contrary to one of the evident purposes of the law requiring a trial judge, upon proper request, to make findings of fact and conclusions of law. Hardin v. Abbey, 57 Tex. 582. Such purpose is to enable the appellate court to determine the correctness of a judgment with reference to the precise points upon which the case was decided in the trial court.

Another interesting question suggested by the record has its basis in the court's finding that there was no acknowledgment taken of plaintiffs by any one. The elimination of the homestead question may render this imma-

terial. It is also noted that the finding seems to be directly contrary to the allegations in plaintiffs' pleading in this respect. This suggests the further question of the validity of a finding as support for a judgment, which is contrary to the plaintiffs' pleading. Necessity for the consideration of this point is obviated by the fact that, in the additional findings, the original finding that there was no acknowledgment is modified or explained to the extent of showing that there was, at least, an appearance of the parties before the notary. It is because of this, we take it, that appellees expressly concede in their brief that questions relating to the irregularity in the taking of the acknowledgment of the married woman has no bearing as to the appellant, Erwin, and it is not so contended. We are inclined to think, but this point also we do not undertake to decide, that if it was necessary for Mrs. Curtis to join in the instrument, and if she had made no appearance whatever before the notary to acknowledge the same, it would have been void, even as to the appellant, an admittedly bona fide purchaser for value. Wheelock v. Cavitt, 91 Tex. 679, 45 S. W. 796, 66 Am. St. Rep. 920.

[4] The question of forgery is properly presented for our determination. It is undoubtedly the rule that the protection usually afforded to a bona fide purchaser for value without notice does not apply when such purchaser's claim is dependent upon a forged instrument.

"No title can be obtained even by an innocent party, under a deed which is forged." 18 C. J. 243.

[5] The question seems to be settled in this state that, when an instrument containing blanks is executed and delivered with authority to another party to fill in the blanks in a prescribed manner, the fraudulent filling in of said blanks contrary to the authority given will constitute forgery. Duncan v. State, 86 Tex. Cr. R. 191, 215 S. W. 853; Hooper v. State, 30 Tex. App. 412, 17 S. W. 1066, 28 Am. St. Rep. 926.

[6] The rule that a bona fide purchaser is not protected against forgery is no better established, however, than another rule—a good statement of which may be found in C. J. as follows:

"It is a well-settled principle applicable to both negotiable and nonnegotiable contracts that, where a person with intent to execute a contract delivers to another an incomplete instrument and such other has authority, either expressly given or implied by law, to complete the instrument, such instrument is enforceable in the hands of a holder for value and without notice, nothwithstanding the blanks have been filled in a manner violative of the authority conferred." 2 C. J. 1252.

In support of this statement of the law there is cited a great many authorities, including the early decision of our Supreme

Court in Jones v. Primm, 6 Tex. 170. In the latter case it is said:

"The defendant intrusted his comakers of the note with his signature; and they having obtained credit upon the strength of it, he cannot shelter himself from responsibility upon the note in the hands of an innocent third party, by alleging that the signature was not used for the purpose he intended, or that he did not specially authorize such third party to fill up the blank over his signature. Having intrusted his comakers with authority to use his signature, if they had even abused that trust, of which there is no evidence, he must suffer the consequences of such abuse, rather than an innocent third party. In such a case, if one should suffer loss, the maxim that he who trusts most must lose most is especially applicable."

See, also, Ragsdale v. Robinson, 48 Tex. 379; Stone v. Brown, 54 Tex. 338.

Almost the same statement of the principle under discussion is found in 1 R. C. L. p. 1022, as follows:

"Where a person executes an instrument containing blanks and intrusts it to a third person with power express or implied to fill in the blanks in a certain manner, and such third person exceeds his authority in filling them, it is well settled that a bona fide holder will be protected and the instrument is enforceable in his hands. This rule has frequently been applied to negotiable instruments. Thus when a person intrusts another with a negotiable instrument which he has signed in blank under an agreement between them that it is to be filled in for a certain amount, or in a certain manner, and this agreement is violated, either by the insertion of a larger amount or by filling the blanks in a manner different from or in excess of the authority conferred, the person receiving the instrument, if he is ignorant of the fraud which has been committed, and gives a valuable consideration for the paper, may recover upon it against the maker. The rule, however, is not restricted to negotiable instruments, but extends to nonnegotiable instruments."

The same authority (1 R. C. L. p. 1024) states the reason of the rule as follows:

"Reason for the rule stated in the preceding paragraph permitting recovery by a bona fide holder is that it places the loss, if loss there be, upon the person who endowed the agent with apparent authority and not upon the innocent third person who trusted to such apparent authority and parted with money or property in consequence of such trust. The law of agency makes the principal liable for the acts of his agent, notwithstanding his private instructions have been disregarded when he held the agent out as having an enlarged authority. For, it is an ancient maxim of the law that, where one of two innocent persons must sustain a loss, he must bear it who is most in fault, and, if by misplaced confidence he enables another to commit a fraud, it is but just that he should pay the penalty of his own indiscretion."

The rule and the reason for the rule is well stated in Fullerton v. Sturges, 4 Ohio St. 529, quoted in note to Burgess v. Blake, 86 Am. St. Rep. 112, wherein it is said:

"No rule is better settled, or founded upon stronger reasons, than that which affirms the liability of one intrusting his name in blank to another, to the full extent to which such other may see fit to bind him, when the paper is taken in good faith and without notice, actual or implied, that the authority given has been exceeded, or the confidence reposed has been abused. It has the effect of a general letter of credit; and the rule is founded, not only upon that principle of general jurisprudence which casts the loss, when one of two equally innocent persons must suffer, upon him who has put it in the power of another to do the injury, but also upon that rule of the law of agency, which makes the principal liable for the acts of his agent, notwithstanding his private instructions have been disregarded, when he has held the agent out as possessing a more enlarged authority."

In view of what has been said it becomes immaterial, as we see it, whether the rule last discussed may be considered as an exception to the rule denying protection against forgery, or whether an unauthorized alteration of an instrument consisting of a violation of instructions in filling out a blank is, as to civil transactions, not regarded as forgery. Certain it is that the very reason for the rule denying to an innocent purchaser protection against an ordinary forgery is the very same reason that accords such protection against that character of forgery, if it be forgery, presented by the facts of this case. It is just as abhorrent to a proper sense of justice that one should have his title stricken down where a remote grantor has unwisely trusted to his grantee to write in the terms of a conveyance as it is that one should lose his property through an ordinary forgery made, as is usually the case, without his knowledge.

The disposition of the case required to be made by reason of the conclusions set out above makes it unnecessary to determine the question of limitation, since such determination could not affect the result.

We are, therefore, of the opinion that the trial court erred in giving judgment against appellant. The other defendants not having appealed, the judgment below will not be disturbed as to them, but as to appellant the judgment of the trial court will be reversed and here rendered that as to appellant the appellees take nothing, and that appellant be and is established in his title to an undivided one-fourth interest in the minerals in said land, and that the cloud cast upon his title to such interest by virtue of the claims made by plaintiffs in this suit be and the same is removed.

Judgment of the trial court reversed and rendered as to appellant.